## UNION TRACTION CO. v. TODD.

Middle Section, March 11, 1933.

Petition for Certiorari denied by Supreme Court, July 19, 1933.

Anderson, Aust, McGugin & Evans, of Nashville, for plaintiff in error Union Traction Co.

John B. Daniel and Cate & Cate, all of Nashville, for defendant in error Todd.

CROWNOVER, J. This was an action for damages for personal injuries sustained by the plaintiff as a result of a collision of his automobile with the Nashville-Gallatin interurban electric car owned by the defendant traction company.

The declaration averred negligence in the failure of the traction company through its servants to observe the statutory precautions when the plaintiff appeared as an obstruction on the track or within striking distance of the car, as the result of which he was injured.

The declaration contained a common-law count which averred negligence of the company in failing to erect barriers between its track and the road on the cut, but the trial judge directed a verdict for the defendant on the common-law count, and that matter is not before us.

The defendant pleaded not guilty.

The case was tried by the judge and a jury.

At the close of plaintiff's evidence, defendant moved the court for a directed verdict in its favor, which motion was overruled as to the statutory count.

At the conclusion of all the evidence, defendant moved the court for peremptory instructions in its favor, "for the reason that under all the evidence of the case, and under all the facts of the case, no verdict in favor of the plaintiff and against the defendant can be sustained." Said motion was overruled, to which action defendant excepted.

The jury returned a verdict of $10,000 in favor of the plaintiff and against the defendant traction company.

Motion for a new trial having been overruled, defendant appealed in error to this court, and has assigned ten errors.

On December 31, 1929, at about 2:15 in the afternoon, Donald

Todd was driving his automobile on the Gallatin road to Nashville, traveling on the right side of the road.

The Union Traction Company's right of way and track were east of, and adjacent to, the Gallatin road, on Todd's left. The Gallatin-Nashville interurban electric car was coming to Nashville.

At a point about a mile north of Edenwold, and about thirteen miles south of Gallatin, a little boy, eight or nine years old, ran out into the road about forty feet in front of Todd's automobile. Todd, who was driving at the rate of about thirty miles an hour, did not see the boy until he appeared on the pavement. The boy was running across the road, and this forced Todd to make a short turn to his left in order to avoid striking him, which carried him across the left shoulder of the road and across a part of the traction company's right of way to the west bank of the ditch on the west side of the track, within striking distance of the interurban car.

The testimony for plaintiff was that, when Todd turned across the right of way, the interurban car was about 300 or 400 feet north of him, traveling south; that Todd's car stopped on the right bank of the ditch at the west side of the track; that the wheels did not get on the track, but the automobile on the bank careened in such a manner as to cause the body to lean over the track within striking distance of the electric car; that the right wheels hung on the top of the bank and the left wheels were on the side of it, and the top of the cab of the automobile extended within striking distance of the interurban car; that the motorman of the interurban car did not sound the whistle or bell, or put down brakes, or check his speed until after the car had run more than 300 feet and had struck Todd's automobile.

Defendant's evidence was that Todd's automobile came over the embankment and struck the interurban car at the right front door; that Todd's automobile and the interurban car were running almost abreast of each other at about the same speed, Todd being ten or fifteen feet ahead; that the automobile left the highway so suddenly and came across the right of way so quickly that the motorman did not have time to sound the whistle or bell; that he put on brakes and went into reverse, but was unable to stop his car before the collision occurred.

The interurban car ran about 200 feet down the track after the collision before it was stopped.

The first three assignments of errors that there was no evidence to support a verdict, and that the court erred in not directing a verdict for defendant company, are not well made. As shown by the foregoing statement of facts, the theory of the plaintiff as to the happening of the accident and the cause of same was entirely different

from that of defendant. There was evidence to support both contentions.

The plaintiff's theory was that, in order to avoid killing a little child, he turned his car to the left, lost control of it, and it stopped on the interurban track, or rather on the bank within striking distance of an approaching interurban car, which was at the time in plain view three or four hundred feet away, and the motorman of the interurban car failed to comply with the statute in regard to obstructions on the track.

Defendant's theory was that the automobile ran into the side of the interurban car, and did not appear as an obstruction in front of it; that, even if the operator of the interurban car had seen him when he first left the road, there was no time for said operator to have complied with all the requirements of the statute.

It was admitted by the defendant that the plaintiff acted in an emergency, and was not guilty of contributory negligence.

But the defendant contends that the physical facts, shown by the photographs and measurements, contradict the oral testimony for the plaintiff by demonstrating the impossibility of the automobile's hanging on the top of the bank with its cab leaning over the track or within striking distance of the car. We have carefully considered the figures given in the evidence—the distance from the top of the bank to the outer edge of the interurban car, the elevation of the top of the bank, the angle of the slope of the side of the bank, and the distance from the top down the slope to the bottom of the ditch at the side of the track, and the height and size of the automobile, and are of the opinion that there is not enough evidence to refute the plaintiff's testimony that the automobile stopped within striking distance of the interurban car, for the reasons that the top of the bank is only seven feet and six inches from the striking distance of the interurban, and the width of the automobile and the distance of the right wheels of the automobile on the bank from the interurban were not shown. Plaintiff's witnesses testified that, while the automobile was hanging there on the bank, it was struck by the interurban; hence it is not shown that this testimony is contrary to the physical facts as contended by the defendant.

Of course, where the evidence about certain matters in dispute is contradicted by physical facts, and it is shown that the matters testified about are physically impossible, such evidence on those facts has no probative force. Nashville, C. & St. L. Ry. Co. v. Perry, 13 Tenn. App., 274; Klein v. Railroad, 4 Tenn. App., 563; Nashville, C. & St. L. R. Co. v. Justice, 5 Tenn. Civ. App., 69.

If the testimony of plaintiff and his two witnesses as to that particular fact had been discredited, such testimony would not be determinative. Even where matters in dispute are discredited by phy-

sical facts, it is no reason to discredit other facts testified to by the same witnesses. 3 Ency. of Evidence 777, 778; 40 Cyc. 2586-2590; Welch v. Young, 11 Tenn. App., 441.

The plaintiff and his two witnesses further testified that, when the automobile came to a stop and became an obstruction, the interurban was three or four hundred feet away, and that the automobile did not run into the interurban car. The jury has found that the automobile was struck by the street car, and there is proof that the statutory precautions were not observed. If the automobile stopped somewhere on the track or within striking distance of the interurban car, the motorman of the car failed to observe the statutory precautions, and the automobile was struck, as plaintiff's witnesses testify, then plaintiff is entitled to recover damages in his action. The jury evidently believed that the interurban struck the automobile and that the motorman had time to observe the statutory precautions, but failed to do so. This was the question the jury had to decide. The automobile was evidently within striking distance, and the fact that it was, or was not, hung up on the bank in some manner, is immaterial and not determinative. The jury having accepted the plaintiff's version of the accident, that the plaintiff's automobile appeared as an obstruction on defendant's track, or within striking distance thereof, and the defendant failed to observe the statutory precautions, as the result of which plaintiff was injured, we are bound by their verdict, and defendant's first three assignments of errors must be overruled.

Defendant's fourth assignment of error complains of the charge of the trial judge. It assigns as error the use of the word "negligence" in charging the jury as to defendant's failure to observe the statutory precautions, defendant contending that the statute gives the plaintiff the right of recovery if the statutory precautions are not complied with, and an action for failure to comply with the statutory precautions is not an action for negligence, and therefore the judge's charge confused the jury. This was an action for damages caused by a collision as a result of the failure on the part of the traction company to observe the statutory precautions (Shannon's Code, sec. 1574, subsec. 4), after plaintiff's automobile came within striking distance of the interurban car and became an obstruction on its track. The statutory provisions apply to interurban railways. Stem v. Interurban Railroad, 142 Tenn., 494, 221 S. W., 192; Union Traction Co. v. Anderson, 146 Tenn., 485, 242 S. W., 876, 25 A. L. R., 1496. The motorman must exercise ordinary care to see that there is nothing on the track or within striking distance of the cars, and failure to do so is, of course, negligence. Failure to observe the statute is negligence per se. 1 Thompson on Negligence (2 Ed.), sec. 10; 3 Elliott on Railroads (3 Ed.), sec. 1648; Wise & Co. v. Morgan, 101

Tenn., 273, 48 S. W., 971, 44 L. R. A. 548; Chattanooga Station Co. v. Harper, 138 Tenn., 562, 199 S. W., 394. We do not think the use of the word "negligence" in this connection was improper, and do not think the jury was confused thereby.

This assignment also complains of the use by the judge in the first paragraph of his charge of the words "who failed to observe the statute," in speaking of the motorman. The judge was then stating the averments of the declaration, and there is no ground for criticism.

It is insisted that the court erred in his charge set out in the following paragraph:

"If this be shown by a preponderance of all the evidence, as aforesaid, then the burden of proof shifts to the side of the defendant, who must show by a preponderance of all the evidence in the case that its motorman did observe said statutory precautions, or that the plaintiff's automobile appeared on the defendant's railroad track so suddenly that its motorman didn't have time to observe said statutory precaution."

Exception is taken to the words "appeared on the defendant's railroad track;" it being insisted that the evidence showed. it appeared "within striking distance" and not on the track, and, where this occurred so suddenly as that the statutory precautions could not be observed, there was no liability. We think this was fully covered by the court in other parts of the charge, and there is nothing in the contention.

It was next assigned that the court erred in his charge on proximate cause by stating:

"The proximate cause of an injury is that act or omission preceding the accident which causes or fails to prevent the injury. In other words, it is the act or omission occurring or concurring with another which, had it not happened, the injury would not have been inflicted,"

—because it was given on the common-law count, which had been eliminated, and therefore it confused the jury. Chesapeake & N. Ry. v. Crews, 118 Tenn., 52, 99 S. W., 368. The charge is a correct definition of proximate cause. Deming v. Merchants' Cotton Press, etc. Co., 90 Tenn., 306, 353, 17 S. W., 89, 13 L. R. A., 518. It is insisted that this part of the charge was not necessary and only served to confuse the jury, but we do not think the jury was confused by this part of the charge. Our appellate courts have held: "The statute is imperative, and the breach of it gives a right of action, whether the nonobservance of the statute was the proximate cause of the accident or not." Illinois Cent. R. Co. v. Davis, 104 Tenn., 450, 58 S. W., 296, 298; Louisville & N. R. Co. v. Ross, 2 Tenn. App., 390; Tenn. Central Ry. v. Page, 153 Tenn., 94, 282 S. W., 376. But the

effect of the statute in actions for damages for injuries resulting from the failure to observe the statutory precautions is the same as a conclusive presumption that the violation of the statute was the proximate cause of the injury. 3 Elliott on Railroads (3 Ed.), sec. 1648, note 30.

We did hold in the case of Nashville Ry. & Light Co. v. Owen, 11 Tenn. App., 19, 20, that "an instruction that upon proof of the accident, the burden of proof shifts to the defendant to establish freedom from negligence by a preponderance of the evidence, is erroneous," but that rule does not apply to actions for damage resulting from failure to observe the statutory precautions, as they are expressly governed by the statute. Shannon's Code, sec. 1576. After the plaintiff had proven that his automobile became an obstruction on the track and there was a collision, the burden of proof shifted to the defendant traction company to prove that it observed the precautions and complied with the statute. Chattanooga Rapid Transit Co. v. Walton, 105 Tenn., 423, 58 S. W., 737; Cincinnati, N. O. & T. P. R. Co. v. Brock, 132 Tenn., 477, 178 S. W., 1115.

It is also assigned as error to the court's charge that defendant was required to observe all the precautions. Defendant's special request No. 2, which was given in charge by the judge, states that the statute does not mean that all of these acts must necessarily be done in every case if the time is so short that only one or more can be done; that in such case he is required to do only such as reasonably appears to him best calculated to prevent the accident. If the judge's charge on this subject was insufficient, then the defect was cured by this request.

We think there is nothing in the assignments complaining of other paragraphs of the charge, as they were covered by other parts of the charge, and the assignments of errors must be overruled.

Defendant's sixth assignment is that the court erred in refusing to charge the following request: "If you find from the evidence, under the instructions heretofore given you for weighing same and as to the burden of proof, that plaintiff's automobile got on defendant's track or within striking distance of defendant's car on its track so suddenly as that it was impossible for defendant's employes or motorman to comply with the statutory precautions, that is, sound the alarm, whistle or bell and put down the brakes or take other precautions to prevent the collision before it occurred, or so suddenly as that such precautions would have been ineffective to prevent the collision, then plaintiff cannot recover, and your verdict should be for the defendant."

The first part of this request had been fully covered by the judge's charge. The latter part is not a correct statement of the law; the law

being that the precautions must be observed whether they will be effective or not.

Defendant's assignment No. 7 complains of the manner of cross-examination of one of defendant's witnesses by the attorney for the plaintiff. This was cross-examination, and the courts allow counsel great latitude in cross-examination, particularly with respect to any matter that would show his interest in the result of the case with a view to reflecting on his credibility as a witness and the weight that the jury should give his testimony. Hughes v. State, 126 Tenn., 80, 148 S. W., 543, Ann. Cas., 1913D, 1262; Zanone v. State, 97 Tenn., 101, 36 S. W., 711, 35 L. R. A., 556; Ryan v. State, 97 Tenn., 206, 36 S. W., 930; 30 Amer. & Eng. Ency. of Law (2 Ed.), 1091.

The eighth assignment is that the court erred in excluding the testimony of an employee of the state highway department as to the grades, elevations, distances, etc., on the Gallatin road, and the testimony of H. C. Wright showing pictures of the bank at the point where the automobile of Todd ran off. It is not shown what the witness Wright would have testified had he been allowed to testify. It is not shown what further facts Tucker would have stated had the court permitted defendant to continue his examination. The facts testified to by Tucker, which the court ruled out, were of no value in determining the questions involved in this case. It results that we cannot consider this assignment. Appellate courts will not reverse a judgment on the exclusion of evidence, unless the evidence is set out in the bill of exceptions. Hood v. Grooms, 4 Tenn. App., 515.

After the trial judge, in overruling the motion for a new trial, had made the statement complained of in the ninth assignment, that the jury were just as competent to pass on the question of the cause of the accident as he was, he went on to say, "Upon consideration of all the evidence, I am satisfied with their finding." He weighed the evidence, and was satisfied with the verdict, and concurred with the jury in finding the facts and in its determination of the weight of the testimony. This was sufficient. Cumberland Telephone & Telegraph Co. v. Smithwick, 112 Tenn., 469-470, 79 S. W., 803; Vaulx v. Railroad, 120 Tenn., 319, 108 S. W., 1142; Hamburger v. Illinois Central R. R. Co., 138 Tenn., 129, 196 S. W., 144; Turner v. Turner, 85 Tenn., 387, 3 S. W., 121; Nashville, C. & St. L. Ry. Co. v. Perry, 13 Tenn. App., 270, 271.

We will treat the fifth assignment as to the excessiveness of the verdict last. We are of the opinion that the verdict is not excessive. The plaintiff was forty-two years of age. He received permanent injuries which will seriously affect him all his life, and his earning capacity is much reduced. His hearing in one ear is impaired. He has a stiffness in his right hip, which the physician testified was

permanent. His hospital and medical bills amounted to $2,800, and he lost three months from work. He suffered a great deal of pain, having had to remain in a plaster of paris cast, in the hospital, for two months. He sustained two fractures of the pelvis, one of the left knee, and the hip bone was broken where the round head of the femur enters the hip bone socket, and he received a blow on the head that caused deafness in one ear. Before this accident he was an insurance agent, making an income of about $3,000 a year. Now he is confined to office work, and makes about $1,800 a year, a reduction of forty per cent in his earning capacity. Considering the serious and permanent character of plaintiff's injuries, the physical pain and suffering he endured, and the permanent impairment of his earning capacity, we think a recovery of $10,000 is reasonable. That amount received the approval of the trial court, and we cannot say that the amount recovered is so out of proportion to the injuries sustained as to indicate passion and prejudice on the part of the jury, or warrant our disturbing it. There is no set measure of damages for personal injuries, and the amount must be largely left to the discretion of the jury and the trial court. Power Packing Co. v. Borum, 8 Tenn. App., 162, 180.

It results that all the assignments of errors are overruled, and the judgment is affirmed. A judgment for $10,000 and interest thereon from March 9, 1932, and the cost of the cause that accrued in the lower court, will be entered in this court in favor of Donald Todd against the Union Traction Company; the cost of the appeal is adjudged against the traction company and the surety on the appeal bond.

Faw, P. J., and DeWitt, J., concur.